THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JACQUELINE ONOFRE, | § | NO. SA-15-CV-425-DAE |
| | § | |
| Plaintiff, | § | |
| vs. | § | |
| | § | |
| C.R. ENGLAND, INC. and PAUL | § | |
| JOHNSON, | § | |
| | § | |
| Defendants. | § | |

ORDER (1) GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
AND (2) MOOTING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

On June 16, 2016, the Court heard oral argument on the Motion for

Partial Summary Judgment filed by Defendants C.R. England, Inc. ("C.R.

England") and Paul Johnson (collectively, "Defendants") (Dkt. # 25), as well as the

Motion for Partial Summary Judgment filed by Plaintiff Jacqueline Onofre,

individually and on behalf of her two minor children Hannah and Luke.[1]  (Dkt.

# 26).  Robert Paul Wilson, Esq., appeared on behalf of Plaintiff.  Averie

Maldonado, Esq., appeared on behalf of Defendants.  After careful consideration of

the memoranda in support of and in opposition to the motions, and in light of the

---

[1] During the hearing, counsel for Plaintiff moved to dismiss Hannah and Luke as
parties; the Court orally granted this motion.

1

parties' arguments at the hearing, the Court, for the reasons that follow, **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Partial Summary Judgment (Dkt. # 25), and **DENIES AS MOOT** Plaintiff's Motion for Partial Summary Judgment (Dkt. # 26).

<u>FACTS</u>

Plaintiff alleges that on August 26, 2014, she and her two minor children were occupants of a parked 2012 Jeep Liberty ("the vehicle") that was struck by a commercial tractor-trailer driven by Defendant Paul Johnson, who was driving for C.R. England.  ("Compl.," Dkt. # 1-1 ¶ 8.)[2]  The parties agree that when the accident occurred, Johnson was attempting to park his tractor-trailer in the parking lot of a Love's gas station, when the truck hit the open rear door of Plaintiff's parked vehicle in the parking lot.  ("Am. Reply," Dkt. # 33, Ex. A ¶ 8; Dkt. # 25 at 1.)

According to Plaintiff, she and her two children were in the vehicle when the tractor-trailer hit the rear door, and the vehicle's back end was lifted approximately four feet off the ground before coming loose, bouncing a few times,

---

[2] While it is undisputed by the parties that the vehicle was parked, Plaintiff's complaint states that the accident occurred while she was "travelling . . . on Interstate Highway 35 in Bexar County, Texas," while all other documents before the Court state that the accident occurred while Plaintiff was stopped at a Love's truck stop.  (<u>See</u> Compl. ¶ 8, Dkt. # 25, Dkt. # 30.)  The Court attributes the statement in the Complaint to error of Plaintiff's counsel.

and landing on the ground.  (Dkt. # 30 at 1–2.)  Plaintiff alleges that both the truck Johnson was driving and the trailer he was towing were owned and operated by C.R. England.  (Dkt. # 30 at 2.)

Defendants state that when Johnson applied to work at C.R. England on May 5, 2014, he disclosed that he had been involved in a minor accident in February 2014, but that he had an otherwise clean record and had not been issued any traffic citations in the prior five years.   (Dkt. # 25 at 3; "Driver Qualification File," Dkt. # 30, Ex. C at 8, 58.)  Johnson was issued a commercial driver's license permit on May 8, 2014, through Premier Truck Driving School's professional truck driving course.  (Dkt. # 25 at 3; Driver Qualification File at 61–62.)  He passed the driving tests[3] and passed his drug and alcohol tests.  (Dkt. # 25 at 3; Driver Qualification File at 60–62.)  Johnson was cleared by the medical examiner and was issued an official license on May 17, 2014; he attended C.R. England's safety orientation on May 20, 2014.  (Dkt. # 25 at 3; Driver Qualification File at 45, 51.)

It is undisputed that Johnson had a series of driving-related incidents between the time he completed the safety orientation with C.R. England and the August 26, 2014 accident at issue in this case.  Defendants do not contest that the

---

[3] Plaintiff argues that Johnson did not receive adequate scores during his final evaluation on either turning or backing up, and that C.R. England should not have allowed him to drive.  (Dkt. # 30 at 4, id. Ex. C at 000131.)  This is addressed in a separate section.

following incidents are documented in Johnson's driver qualification file:

(1) Johnson hit a stop sign while making a wide right-hand turn on July 14, 2014, causing $750 of damage (Dkt. # 25 at 4; Driver Qualification File at 111, 113);

(2) Johnson caused $800 of damage to his truck when making a tight turn around another truck on August 7, 2014 (Dkt. # 25 at 4; Driver Qualification File at 126–27); (3) Johnson's tractor-trailer had to be towed out of a ditch on August 23, 2014, which caused no damage to the truck or other property and was not classified as an accident (Dkt. # 25 at 4; id. Ex. A at 22–23); (4) Johnson "made contact with a concrete block while backing into a dock" on August 25, 2014, causing $1,500 of damage (Dkt. # 25 at 4; Driver Qualification File at 131). The accident at the heart of this lawsuit occurred the day after the incident with the dock.  After Johnson's first and second accidents, C.R. England provided Johnson with additional training in the form of a road evaluation on effecting safe turns, a range evaluation, and various safety videos;[4] however, no remedial activity had occurred with regard to the August 23 and August 25 incidents.  (Dkt. # 25 at 4; id. Ex. A at 14–16, 21.)

---

[4] Specifically, after Johnson hit the stop sign, C.R. England "brought him in for an evaluation, and within the evaluation, they road tested him to see whether or not there was a deficiency in his capacity to operate the vehicle."  ("Thompson Dep.," Dkt. # 30, Ex. B. at 92:13–16.)  Pursuant to the evaluation and road test, C.R. England made the decision to "authorize[ ] further training" rather than terminate Johnson, and "sent him back out" on the road.  (id. at 92:21–23.)

Instead, Johnson was terminated on August 27, 2014.  (Driver Qualification File at 135.)

On March 20, 2015, Plaintiff filed suit against Johnson and C.R. England in the 57th Judicial District Court of Bexar County, Texas.  (Dkt. # 1-1.) On May 22, 2015, Defendants removed the case to this Court, pursuant to its diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441(a).  (Dkt. # 1.)  Plaintiff alleges that Johnson is liable for negligence and negligence per se for violating the Texas Transportation Code.  (Compl. ¶ 10–11.)  Plaintiff alleges C.R. England is liable under the doctrine of respondeat superior, as well as for negligent hiring, training, supervision, and retention of Johnson,[5] and negligent entrustment of a vehicle to Johnson.  (Compl. ¶ 13.)  Plaintiff also alleges that Johnson and C.R. England were grossly negligent.  (Compl. ¶¶ 14–15.)

Plaintiff alleges that she suffered severe and permanent bodily injuries to her head, neck, back, "and other parts of her body generally" as a result of the accident, and seeks past and future medical expenses, damages for physical pain, suffering, physical impairment, disability, mental anguish, and physical disfigurement.  (Compl. ¶¶ 17– 20.)  At the hearing, Plaintiff's counsel averred that the minor children did not suffer any physical injuries in the accident, and moved

---

[5] Plaintiff also alleges that C.R. England is liable for negligent failure to ensure Johnson's driving qualifications, but it appears that this is subsumed by the negligent hiring, training, supervision, and retention claims.  (Compl. ¶ 13.)

to remove the minor children as parties in the case.  The complaint does not assert a cause of action for intentional infliction of emotional distress; accordingly, no claims exist on behalf of the minor children, and they are dismissed as parties.

Defendants filed their Motion for Partial Summary Judgment on January 8, 2016.  (Dkt. # 25.)  Plaintiff responded on January 22, 2016.  (Dkt. # 30.)  Defendant filed a reply on January 29, 2016.  (Dkt. # 34.)  Plaintiff also filed a Motion for Partial Summary Judgment on January 8, 2016.  (Dkt. # 26.)  On January 25, 2016, Defendants filed an amended answer to Plaintiff's complaint, addressing the issue in Plaintiff's Motion.  (Dkt. # 33.)

## LEGAL STANDARD

"Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  Bridgmon v. Array Sys. Corp., 325 F.3d 572, 576 (5th Cir. 2003); Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  The main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).  The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Id. at 323.  If the moving party meets this burden, the non-moving party must come forward with specific facts that establish

6

the existence of a genuine issue for trial.  ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012).  In deciding whether a fact issue exists, the Court "may not make credibility determinations or weigh the evidence."  Tibler v. Dlabal, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012) (quoting Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## ANALYSIS

I.  Negligence Claims Against C.R. England

Plaintiff alleges that C.R. England is negligent under various theories: (1) negligent hiring, training and supervision, and retention of Johnson; and (2) negligent entrustment of a vehicle to Johnson.  (Dkt. # 30 at 4–8.)  Each is addressed below.

A. <u>Negligent hiring, training, and supervision claims</u>

"Negligent hiring, retention, and supervision claims are all simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability." <u>Morris v. JTM Materials, Inc.</u>, 78 S.W.3d 28, 49 (Tex. 2002). Like any other cause of action involving negligence, a plaintiff must demonstrate that the employer had a legal duty, that "a breach of that duty" occurred, and that the plaintiff's damages were "proximately caused by the breach." <u>Id.</u>; <u>Castillo v. Gulf Coast Livestock Market, LLC</u>, 392 S.W. 3d 299, 306 (Tex. App. 2012) (overturned on other grounds by <u>Gonzalez v. Ramirez</u>, 463 S.W. 3d 499 (Tex. 2015)). Such "claims focus on the employer's own negligence, not the negligence of the employee. An employer can be liable for negligence if its failure to use due care in hiring, supervising, or retaining an employee creates an unreasonable risk of harm to others." <u>Clark v. PFPP Ltd. P'ship</u>, 455 S.W.3d 283, 287 (Tex. App. 2015).

1. <u>Whether C.R. England is liable for negligent hiring</u>

"An employer owes a duty to its other employees and to the general public to ascertain the qualifications and competence of the employees it hires, especially when the employees are engaged in occupations that require skill or experience and that could be hazardous to the safety of others." <u>Morris</u>, 78 S.W.3d at 49. "Negligence in hiring requires that the employer's 'failure to investigate,

8

screen, or supervise its hires proximately caused the injuries the plaintiffs allege.'"
Fifth Club, Inc. v. Ramirez, 196 S.W.3d 788, 796 (Tex. 2006) (quoting Doe v.
Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995)).  Here, C.R.
England had a duty to hire drivers competent and fit to operate commercial
vehicles on public roads.  Accordingly, C.R. England is liable for negligent hiring
where "it hires an incompetent or unfit employee whom it knows, or by the
exercise of reasonable care should have known, was incompetent or unfit, thereby
creating an unreasonable risk of harm to others."  Morris, 78 S.W.3d at 49.  "An
employer is not negligent when there is nothing in the employee's background that
would cause a reasonable employer not to hire . . . the employee."
Dangerfield v. Ormsby, 264 S.W.3d 904, 912 (Tex. App. 2008)

Plaintiff alleges that C.R. England breached its duty to hire competent
and fit drivers in two ways: (1) it was aware that Johnson had had an accident in
the last five years prior to applying to work for C.R. England and hired him
anyway (Dkt. # 30 at 4); (2) Johnson allegedly received low scores in his final
driving evaluation, indicating that he was not adequately skilled in turning or
backing the truck.  (Dkt. # 30 at 4–5; Driver Qualification File at 60.)

The C.R. England driver application asks applicants to list all
accidents they have been involved in for the past five years.  Johnson listed only
one accident, which occurred on February 4, 2014.  ("Driver Qualification File,"

Dkt. # 30, Ex. C, at 12.)  According to the application, the accident occurred when he was pulling into a side street to back up and turn around.  (Id.; Dkt. # 25 at 3.) Johnson was not issued a ticket for the incident, and reported he that no injuries or fatalities occurred as a result.  (Id.)  The driver application also requires applicants to list any tickets received in the past five years; Johnson did not report any tickets, and did not report that his license had ever been suspended or revoked.  (Id.) There is neither evidence in the record, nor allegations in the pleadings to indicate that this information is untrue.  Plaintiff also submitted evidence that C.R. England ran a Motor Vehicle Report on Johnson prior to extending him a full offer of employment, and this record came back completely clear.  (Id. at 58.)

Johnson's final driver evaluation on May 15, 2014, prior to his final offer of employment, indicates that he failed to execute a mid-turn traffic check (Driver Qualification File at 60); according to Gary Thompson, the standards manager for curriculum development at C.R. England, this means that Johnson did not "look back in the opposite direction as he ma[de] his turn."  ("Thompson Dep.," Dkt. # 30, Ex. B at 84:1–11.)  According to Thompson, Johnson's failure to execute a mid-turn traffic check was his only failure out of twenty evaluation points when executing turns during the final evaluation.  (Id. at 83:14–16.)  This is clear from the evaluation form itself, which indicates that Johnson was not docked points for nineteen other evaluation points regarding turns.  (Driver Qualification

File at 60.)  Plaintiff also alleges that Johnson received a score of "negative five" on the evaluation for his skills backing the truck.  (Dkt. # 30 at 4; Driver Qualification File at 60.)  Rather, it appears that Johnson lost five points on backing during his final evaluation.  (Driver Qualification File at 60.)  Nonetheless, Johnson's score on the road portion of his commercial trucking exam was a 90%, a passing score.  (Id.)  Johnson also scored a 91.4% on the written portion of his commercial driving exam.  (Id. at 55.)

Additionally, the evidence before the Court, submitted largely by Plaintiff, indicates that C.R. England thoroughly screened Johnson's qualifications prior to extending him an offer of employment.  However, even if C.R. England had further investigated Johnson before hiring him, there is no indication that they would have found information that would cause a reasonable employer not to hire him; the accident was not foreseeable based upon Johnson's record at the time he was hired.  See Ramirez, 196 S.W.3d at 796–97.  Plaintiff has failed to demonstrate that C.R. England breached its duty to "ascertain the qualifications and competence of the employees it hires," and there is no evidence that C.R. England was negligent when it hired Johnson as a driver.  Morris, 78 S.W.3d at 49. Accordingly, no genuine issue of material fact exists with regard to the negligent hiring claim against C.R. England and its motion for summary judgment on this issue is **GRANTED**.

11

2.  <u>Whether C.R. England is liable for negligent training and supervision</u>

"In the context of negligent training [and supervision], the evidence must establish that (1) the employer owed the plaintiff a legal duty to train competent employees, (2) the employer breached that duty, and (3) the breach proximately caused the plaintiff's injury."  <u>McLaurin v. Waffle House, Inc.</u>, No. CV H-14-0740, 2016 WL 1464623, at *19 (S.D. Tex. Apr. 13, 2016); <u>Wal–Mart Stores, Inc. v. Aguilera–Sanchez</u>, No. 04–02–00458–CV, 2003 WL 21338174, at *5 (Tex. App. 2003).  Importantly, "[a] plaintiff must prove that a reasonably prudent employer would have provided training beyond that which was given and that failure to do so proximately caused his injuries.  <u>McLaurin</u>, 2016 WL 1464623, at *19; <u>Dangerfeld</u>, 264 S.W.3d at 912.  "[T]here is a broad consensus among Texas courts that . . . a [negligent training or supervision] claim requires that the plaintiff suffer some damages from the foreseeable misconduct of an employee [trained] pursuant to the defendant's negligent practices."  <u>Wansey v. Hole</u>, 379 S.W.3d 246, 247 (Tex. 2012).

Here, it is clear that C.R. England had a duty to train and supervise Johnson on safe operation of commercial trucking vehicles.  Plaintiff alleges that C.R. England breached this duty because Johnson failed to execute a mid-turn traffic check during his final evaluation, but was permitted to drive a commercial vehicle without undergoing further training.  (Dkt. # 30 at 6; Driver Qualification

File at 60.)  Plaintiff also alleges that C.R. England breached its duty to train and supervise Johnson after his accidents; Plaintiff alleges that although Johnson was re-trained and passed evaluations after the first two accidents, the evaluations indicate that Johnson still had difficulty turning, and that "the focus should not have been on passing the evaluation, but on whether he could safely turn the 18-wheeler."  (Dkt. # 30 at 7–8; Driver Qualification File at 117, 125.)  Finally, Plaintiff alleges that the fact that C.R. England placed Johnson on probation within months of his date of hire is evidence of negligent supervision.  (Dkt. # 30 at 6–7.)

It is undisputed that prior to being employed with C.R. England, Johnson was required to successfully complete a commercial drivers licensing program and new hire orientation, and pass a driving evaluation with road and written components with a score of at least 80 percent.  (Driver Qualification File at 18, 34–36.)  Plaintiff does not dispute that Johnson passed his final driving evaluation, and do not argue that drivers are expected to receive a perfect score on their evaluation.  (Driver Qualification File at 60.)  Prior to Johnson's hire, C.R. England provided him with safety training (id. at 68) and hazardous material and brake inspection training (id. at 72), and required Johnson to familiarize himself with both C.R. England's Driver Employee Policy Manual and the Federal Motor Carrier Safety Regulations, contained in a "Pocketbook" it provided (id. at 84).  Johnson was re-trained after each of his first two accidents; each time, he

13

completed a workbook, viewed safety videos, wrote a report on avoiding similar accidents in the future, and completed a road evaluation.  (Dkt. # 34 at 4; Driver Qualification File at 114–17; 126–28.)  Johnson received a passing score on each driving evaluation after he completed additional training: he appears to have lost a total of seven turning-related points on his first evaluation after retraining and his overall evaluation score was 92%, within the passing range.  (Driver Qualification File at 117.)  Johnson also passed his second evaluation after retraining; based upon the evidence before the Court, it is unclear where, if anywhere, Johnson lost points on this evaluation.  (Id. at 125.)  Still, Johnson was placed on probation after his second accident, and was required to call the Operational Safety Manager once a month for a year.  (Id. at 126.)

Plaintiff argues that C.R. England should have determined Johnson's competency to drive a commercial truck by evaluating his turning skills in isolation.  (Dkt. # 30 at 8.)  However, she presents no evidence to demonstrate that C.R. England's training or post-training evaluations were inadequate, or that a reasonably prudent employer would have provided further training.[6]

---

[6] Plaintiff's contention that Johnson's probation is evidence of negligent training and supervision is similarly meritless.  While Johnson's continued driving on probation might support a claim of negligent entrustment, it is clear to this Court that C.R. England placed Johnson on probation precisely because it was supervising Johnson and tracking his incidents.  Accordingly, the evidence does not support a finding that C.R. England breached its duty to train Johnson.  This evidence will be addressed in the section discussing negligent entrustment.

Finally, <u>even if</u> Plaintiff was to present evidence that C.R. England breached its duty to train and supervise Johnson, which she has not, she has provided no evidence that this failure proximately caused Johnson's accident. Rather, it appears that Johnson had his accident <u>despite</u> the remedial training and supervision he received from C.R. England.  Accordingly, there is no genuine issue of material fact as to whether C.R. England breached its duty to train and supervise Johnson, and summary judgment is **GRANTED** as to this issue.

    3.  <u>Whether C.R. England is liable for negligent retention</u>

In the state of Texas, a plaintiff can recover "where an employer knew or should have known through the exercise of reasonable care that an employee was incompetent or unfit and that his . . . retention would thereby create an unreasonable risk of harm to others." <u>Verhelst v. Michael D's Rest. San Antonio, Inc.</u>, 154 F. Supp. 2d 959, 967 (W.D. Tex. 2001) (citing <u>Kesler v. King</u>, 29 F.Supp.2d 356, 376–77 (S.D. Tex. 1998)).  Accordingly, C.R. England had a duty against offering continued employment to any individual whose operation of a commercial truck caused an unreasonable risk of harm to individuals on the road. <u>See</u> <u>id.</u>

As stated above, Johnson had four accidents between July 14, 2014 and August 25, 2014.  While these accidents were each rated a "1," the lowest severity level, by C.R. England, were allegedly not reportable to the Department of

15

Transportation, and were unquestionably minor—each occurred at a low rate of speed, none involved physical harm to another person or a passenger vehicle, and none caused property damages in excess of $1,500—their frequency could indicate that Johnson's retention as a truck driver created an unreasonable risk of harm to other drivers on the road.[7]  This is a question of fact for the jury.  Further, the July 14, 2014, and August 7, 2014 accidents, both of which involved turning, and one of which involved turning in a parking lot, were similar to the August 26, 2014 accident involving Plaintiff.  Whether or not these two accidents, which did not involve passenger vehicles or injuries to persons, could have made the instant accident reasonably foreseeable to C.R. England—potentially making C.R. England's continued retention of Defendant the proximate cause of the accident— is also a question of fact.

Accordingly, there is a genuine issue of material fact as to whether C.R. England breached its duty by retaining Johnson as a driver.  If a breach is found, a second genuine issue of fact exists regarding whether this breach was the proximate cause of the accident with Plaintiff.  Summary judgment on Plaintiff's negligent retention claim is therefore **DENIED**.

---

[7] As stated above, the a claim for negligent retention is a "simple negligence cause[ ] of action based on an employer's direct negligence rather than vicarious liability."  Morris, 78 S.W.3d at 49.  To prevail, a plaintiff must demonstrate that the employer had a legal duty, that a breach occurred, and that the breach proximately caused the plaintiff's injuries.  Id.

B.  Negligent entrustment claim

To be liable for negligent entrustment, a Plaintiff must prove that C.R. England (1) entrusted its vehicle; (2) "to an unlicensed, incompetent, or reckless driver;" (3) whom C.R. England "knew or should have known was incompetent, or reckless," (4) that Johnson  was "negligen[t] on the occasion in question; and (5) Johnson's negligence "proximately caused the accident."  Morris, 78 S.W.3d at 52; Schneider v. Esperanza Transmission Co., 744 S.W.2d 595, 596 (Tex. 1987).

Here, there is no dispute that C.R. England entrusted its tractor-trailer to Johnson, nor is there a question that Johnson was licensed to operate a commercial vehicle at the time the accident occurred.  The parties dispute whether Johnson was an incompetent or reckless driver, and whether C.R. England knew or should have known Johnson was an incompetent or reckless driver.  (Dkt. ## 25 at 8–9; 30 at 11–12; 34 at 7–8.)  The parties do not address whether Johnson was negligent, nor do they address whether Johnson's negligence proximately caused the accident.

C.R. England argues that it satisfied its duty to evaluate Johnson when it verified that Johnson possessed a valid, unrestricted commercial driver's license. (Dkt. # 25 at 8.)  In certain contexts, this "is evidence of a driver's competency absent any evidence to the contrary."  Avalos v. Brown Auto. Ctr., Inc., 63 S.W. 3d 42, 48 (Tex. App. 2001) (finding a mechanic adequately determined a driver

17

was not reckless or incompetent prior to loaning a car, because the driver held a

valid license); <u>Bartley v. Budget Rent-A-Car Corp.</u>, 919 S.W.2d 747, 752 (Tex.

App. 1996) ("The license evinced that [driver] possessed a minimum of

competence and skill as a driver, and it fixed the standard of conduct for

[company] in leasing its truck."). However, those cases which state an entrustor

satisfies its duty by determining the driver possesses a valid license involve rental

car companies; Texas courts have not applied this standard in the case of a

commercial trucking company entrusting a commercial vehicle.

       Whether a driver is reckless or incompetent, for purposes of liability

for negligent entrustment, is determined at "the time the entrustment was made,"

rather than at the time of the accident.  <u>Louis Thames Chevrolet Co. v. Hathaway</u>,

712 S.W.2d 602, 604 (Tex. App. 1986).  When determining whether a driver is

reckless or incompetent, "[r]eliance is generally placed upon evidence of previous

traffic violations, previous habits or intemperance."  <u>Revisore v. West</u>, 450 S.W.2d

361, 364 (Tex. App. 1970).  Texas courts have not articulated a concrete standard

for recklessness or incompetence.  Generally, a single traffic ticket "is not

sufficient to establish incompetency or recklessness."  <u>Hathaway</u>, 712 S.W.2d at

604.  On the other hand, a driver is reckless for purposes of negligent entrustment

where "his driving presents a danger to others."  <u>McGuire v. Wright</u>, No. 96–

50931, 1998 WL 156342, at *3 (5th Cir. 1998) (internal emphasis omitted).  With

18

the exception of extraordinarily clear cases such as intoxication at the time of entrustment, a driver's incompetence or recklessness is a question of fact for the jury, and subsequent litigation deals with the sufficiency of the evidence supporting a jury's finding.  See, e.g., Avalos, 63 S.W.3d at 49.

   Plaintiff alleges that Johnson was a reckless or incompetent driver because (1) he had a turning-related accident before he was hired; (2) he did not receive a perfect score in turning or backing when taking his final road evaluation; and (3) he had multiple accidents prior to the accident at issue.  (Compl. ¶ 13(b); Dkt. # 30 at 11–12.)  Certainly, C.R. England was aware of this information on the day of the accident, but argues that this does not establish Johnson's recklessness or incompetence, because "Johnson was never involved in any high speed, high impact, major collisions, or collisions involving personal injury or more than $1500 in property damage."  (Dkt. # 34 at 7–8.)  Whether this conduct, of which C.R. England was aware, rises to the level of incompetence or recklessness is a question of fact for the jury.

   Finally, "[o]n a negligent entrustment theory, a plaintiff must prove, among other elements, that the driver was negligent on the occasion in question and that the driver's negligence proximately caused the accident."  Shupe v. Lingafelter, 192 S.W.3d 577, 580 (Tex. 2006).  Neither party has sought summary judgment on the issue of Johnson's negligence; even if there was no question of

fact regarding incompetence or recklessness, this Court cannot make a finding on negligent entrustment until the issue of Johnson's negligence is decided.

Because a genuine issue of material fact exists as to whether Johnson was an incompetent or reckless driver on August 26, 2014 when C.R. England entrusted the truck to him, and Johnson's negligence has not been decided, summary judgment on the issue of negligent entrustment is **DENIED**.

## II.  Negligence Per Se Claim against Johnson

Plaintiff's Complaint alleges that Johnson is liable for negligence per se for violating sections 545.351 and 545.401 of the Texas Transportation Code. (Compl. ¶¶ 10–11.)  Plaintiff's counsel informed the Court during the hearing that he does not intend to pursue the claims for negligence per se.[8]  Accordingly, Plaintiff's claim that Johnson is liable for negligence per se for violating sections 545.351 and 545.401 of the Texas Transportation Code are **DISMISSED**.

## III.  Gross Negligence

"The standard for proving gross negligence under Texas law is considerably more stringent than the 'reasonable person' standard for ordinary negligence."  Henderson v. Norfolk Southern Corp., 55 F.3d 1066, 1070 (5th Cir. 1995).  The presence of gross negligence is established by meeting both prongs of

---

[8] Importantly, the Court would otherwise have granted summary judgment on each of these claims, as Plaintiff presented no evidence that Johnson violated either section 545.351 or 545.401 of the Texas Transportation Code.

a two-part test.  First, "viewed objectively from the actor's standpoint, the act or omission complained of must depart from the ordinary standard of care to such an extent that it creates an extreme degree of risk of harming others."  Columbia Med. Ctr. of Las Colinas, Inc., v. Hogue, 271 S.W.3d 243, 250 (Tex. 2008); Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 23 (Tex. 1994).  Second, "the actor must have actual, subjective awareness of the risk involved and choose to proceed in conscious indifference to the rights, safety, or welfare of others." Hogue, 271 S.W.3d at 248; Moriel, 879 S.W.2d at 23; Tex. Civ. Prac. & Rem. Code § 41.001(11).  Plaintiff argues that C.R. England was grossly negligent because it allowed Johnson to drive despite its awareness that Johnson had at least three prior incidents involving turning or backing.  (Dkt. # 30 at 16.)

   A. Extreme Risk of Harm Analysis

         A plaintiff seeking to recover on a theory of gross negligence must demonstrate that the defendant was objectively aware that its act or omission would create an extreme risk of harm for others.  See Hogue, 271 S.W.3d at 250. "'[E]xtreme risk' is not a remote possibility or even a high probability of minor harm, but rather the likelihood of the plaintiff's serious injury."  U-Haul Int'l, Inc. v. Waldrip, 380 S.W.3d 118, 137 (Tex. 2012).  The risk must be "of serious harm, 'such as death, grievous physical injury, or financial ruin.'"  Henderson, 55 F.3d at 1070 (quoting Moriel, 879 F.2d at 24); see also Russell Equestrian Ctr. v. Miller,

406 S.W.3d 243, 251–52 (Tex. App. 2013).  "An act or omission that is merely

ineffective, thoughtless, careless, or not inordinately risky is not grossly

negligent."  Reeder v. Wood Cty. Energy, LLC, 395 S.W.3d 789, 797 (Tex. 2012).

Finally, this risk "must be examined prospectively from the perspective of the

actor, not in hindsight."  Hogue, 271 S.W.3d at 248.

    Plaintiff does not present any evidence or otherwise argue that

Johnson's demonstrated difficulty completing turns at a low rate of speed presents

an "extreme risk" of "death" or "grievous injury."  (See Dkt. # 30.)  Johnson's

prior turning-related accidents involved relatively minor property damage; even in

the instant claim, Plaintiff does not allege that her injuries are grievous.[9]  (See id.)

Plaintiff may successfully argue that Johnson's actions should have notified C.R.

England of a probability that his continued truck operation would result in minor

harm, but there is no indication that the harm would rise to the level necessary to

support a finding of gross negligence.  The outcome of this analysis might be

different if C.R. England permitted Johnson to drive, knowing he had difficulty

controlling his truck at high speeds, or if Johnson was a reckless driver on the

highway, or if he had been in an accident involving injury to a person.  However,

Plaintiff does not argue—and the Court can find no case—to support the notion

---

[9] While no evidence of injury has been submitted to the Court at this time, counsel
for Plaintiff stated during the hearing that Plaintiff has not undergone surgery to
correct any injuries sustained in the accident because she suffers from diabetes.

that continued operation of a tractor-trailer despite a demonstrated difficulty

executing tight turns presents an <u>extreme</u> risk of harm to others, where the driver

has not otherwise had significant difficulty operating the vehicle.

     B. <u>Subjective Awareness of the Risk Analysis</u>

       With regard to the second prong of the gross negligence test, "[i]t is

the plaintiff's burden to show that the defendant knew about the peril but his acts

or omissions demonstrate that he did not care." <u>Sage v. Howard</u>, 465 S.W.3d 398,

407 (Tex. App. 2015); <u>also see</u> <u>Louisiana-Pacific Corp. v. Andrade</u>, 19 S.W.3d

245, 246–47 (Tex. 1999).

       Plaintiff focuses exclusively on this prong of the test in her pleadings.

(Dkt. # 30 at 15–16.)  The Court finds that she has adequately demonstrated that

C.R. England had subjective awareness of Johnson's numerous turning-related

incidents.  Nevertheless, Plaintiff has not met the first prong of the gross

negligence test.  Plaintiff has not demonstrated that Johnson's history of turning-

relating incidents, which had previously resulted in property damage to a road sign

and the door of his truck, meant that his driving presented an extreme risk of harm

to others and that C.R. England was aware of the "peril" of continuing to allow

Johnson to operate the truck.  Accordingly, Plaintiff has not demonstrated that

there is a genuine issue of material fact as to C.R. England's liability for gross

negligence.  Accordingly, Defendants' motion for summary judgment on the issue of gross negligence is **GRANTED**.

   IV.   <u>Plaintiff's Motion for Partial Summary Judgment</u>

           Plaintiff's motion sought partial summary judgment regarding Defendants' defense that Plaintiff was contributorily negligent in causing the accident.  (Dkt. # 26.)  On January 25, 2016, Defendants filed an amended answer eliminating the defense of contributory negligence.  (Dkt. # 33.)  Accordingly, Plaintiff's Motion for Partial Summary Judgment is **DENIED AS MOOT** (Dkt. # 26.)

CONCLUSION

           The negligence claims against Johnson and respondeat superior claims[10] against C.R. England were not addressed in the instant motions for partial summary judgment.  Accordingly, these issues remain.  The Court  **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Partial Summary Judgment (Dkt. # 25).  The Motion is **GRANTED** on the issues of negligent

---

[10] Importantly, if Plaintiff establishes that Johnson was acting in the scope of his employment at the time of the accident, and establish that C.R. England is liable for any potential negligence under the theory of respondeat superior, she may not also pursue her claims for negligent retention and negligent entrustment.  <u>See</u> <u>Rosell v. Cent. W. Motor Stages, Inc.</u>, 89 S.W.3d 643, 654 (Tex. App. 2002) ("Where only ordinary negligence is alleged, . . . negligent hiring or negligent entrustment and respondeat superior are mutually exclusive modes of recovery."); <u>CoTemp, Inc. v. Houston West Corp.</u>, 222 S.W.3d 487, 492 n.4 (Tex. App. 2007); <u>Arrington's Estate v. Fields</u>, 578 S.W.2d 173, 178 (Tex. Civ. App. 1979).

hiring, negligent training, negligent supervision, and gross negligence, and these issues are **DISMISSED** (Dkt. # 25).  Pursuant to the parties' agreement, the claims for negligence per se are also **DISMISSED**.  The Motion is **DENIED** on the issues of negligent retention and negligent entrustment, and these claims remain (Dkt. # 25).  Finally, Plaintiff's Motion for Partial Summary Judgment is **DENIED AS MOOT** (Dkt. # 26).

    **IT IS SO ORDERED**

    **DATED:** San Antonio, Texas, June 17, 2016.

_____

David Alan Ezra
Senior United States Distict Judge